KENNEDY, Justice.
This case involves a foreclosure on an apartment complex wherein the mortgagee, Regions Bank of Louisiana (“Regions”), formerly known as Secor Bank, recouped as part of the money owed it by the mortgagor, General Jackson Apartments (“General Jackson”),[1] an attorney fee it claimed to have incurred in regard to the foreclosure. The amount of the debt owed by General Jackson was $618,943.48. The amount of the attorney fee Regions alleged it had incurred was $92,-841.52; Regions also claimed expenses of $156.14. Regions claimed a total of $711,-941.14.
Regions bought the property at the foreclosure sale as the high (and only) bidder, for $711,941.14. This amount was sufficient to fully cover the amount sought by Regions as a mortgagee: the $618,943.48 mortgage indebtedness, the expenses of $156.14, and the attorney fee of $92,841.52. Ultimately, Regions had to pay only $3,345 as an attorney fee — $89,496.52 less than it collected as a mortgagee.
Before the foreclosure sale, Regions’ attorney and James Mathis, a vice president of Regions (then Secor Bank), had discussed that the attorney was to receive as his fee an amount equal to 15% of the mortgage indebtedness amount recovered in the foreclosure sale. Given that in the foreclosure sale Regions recovered the full amount of the mortgage indebtedness, that fee would have been $92,841.52. However, consistent with the attorney’s conversations with Mathis, if, as events later evolved, General Jackson did not redeem the property and it was resold after the foreclosure sale for less than Regions, as a purchaser, had paid for it in the foreclosure, the fee was to go down to $500, plus half a percent of the amount of the mortgage indebtedness recouped in the foreclosure sale less $50,000. The amount of the attorney fee calculated on this basis would have been approximately $3,345.
As a practical matter, under this arrangement the attorney fee could not be known until after the one-year statutory redemption period had expired, see Ala. Code 1975, § 6-5-252 (a redemption “[t]ender or suit must be made or filed within one year from foreclosure”). However, on the day of the foreclosure sale, October 30,1989, Regions’ attorney submitted a bill to Regions for $3,345 for his services related to the foreclosure. Less than one week later, this bill for the attorney’s services was marked “paid,” and there is no indication in the record that this payment was merely an advance on a sum to be determined later.
*1114 General Jackson sued Regions for a judgment declaring that it was entitled to what it alleged to be an $89,946.52 “surplus” created by the fact that the attorney fee it paid was less than Regions had collected from the foreclosure sale proceeds. There is no dispute that if there was a surplus General Jackson was entitled to it. At issue is whether there was a surplus created by the fact that the attorney fee, assessed by Regions as $92,841.52, was actually $89,496.52 less.
The trial court entered a summary judgment in favor of Regions, holding, among other things, that no surplus was created by the foreclosure. The Court of Civil Appeals summarily affirmed, pursuant to Rule 58, Ala.RApp.P. We granted certiorari review. We hold that that court erred in affirming summary judgment.
A summary judgment is proper only if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Ala.R.Civ.P. 56(c). Based on undisputed material facts, we must conclude that Regions was not entitled to a judgment as a matter of law.
The mortgage that was foreclosed by Regions provided that Regions was “entitled to collect all reasonable costs and expenses incurred in pursuing [foreclosure of the mortgage], including, but not limited to, reasonable attorneys fees.”[2] Regions says that under the arrangement it had with its attorney before the foreclosure sale, it was subject to paying an attorney fee equal to 15% of the amount of the mortgage debt recouped in the foreclosure sale and, therefore, that it had “incurred” a 15% fee (totalling $92,-841.52). It correct!y states that in Ex parte Old Southern Life Ins. Co., 503 So.2d 852 (Ala.1986), this Court accepted as the “correct” definition for the word “incur” the phrase “become liable or subject to.”
In Old Southern the Court limited the definition of “incur” by referring to “the issue posed” in that case. There, the Court was considering the meaning of “incur” as that word was used in an insurance statute. The mortgage context of this present case, of course, implicates special concerns. In the mortgage foreclosure context, for example, we have stated: ‘When a mortgagee forecloses a mortgage pursuant to a power, the mortgagee becomes a trustee of the debt- or/mortgagor, and is bound to act in good faith and adopt all reasonable modes of proceeding in order to render the sale most beneficial to the mortgagor.” Wood River Development, Inc. v. Armbrester, 547 So.2d 844 (Ala.1989).
Assuming arguendo, however, that in this context “incur” should be read to mean “become liable or subject to,” we would hold that the $92,841.52 attorney fee was far too attenuated a possibility to reasonably be viewed as something Regions had “become liable or subject to.” This is suggested from the fact that the fee seemingly sprang from a loose arrangement between Mathis and .the attorney for Regions, and, more important, it is evident from the fact that, notwithstanding previous conversations between the attorney and Mathis, the record affirmatively reflects that on the day the foreclosure and sale were completed Regions was indebted to its attorney for his foreclosure-related services in the amount of $3,345 — i.e, that it had “become liable or subject to” a fee of $3,345. We therefore hold that the trial court erred in entering the summary judgment for Regions; it is clear that, as a matter of law, General Jackson is entitled to a judgment declaring that it is entitled to the $89,496.52 surplus generated at the foreclosure sale.
The judgment is reversed and the cause is remanded for the entry of a judgment consistent with this opinion. The trial court, because it was entering the summary judgment for Regions, pretermitted consideration of General Jackson’s additional requests for relief; on remand, the trial court is also to consider those additional requests.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, and INGRAM, JJ., concur.
BUTTS, J., concurs in the result.
HOUSTON and COOK, JJ., dissent.

. The record indicates that the mortgagor was actually Charles C: Vaughn, who was apparently a partner in General Jackson. Because the parties on appeal treat the mortgage and foreclosure as transactions involving Regions and General Jackson, we have done the same.

. There is no issue raised here as to whether a fee of $92,841.52 would have been “reasonable.”